# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PETER LAWRENCE,<br><br>    Petitioner,<br><br>    v.<br><br>TARRY WILLIAMS, Warden, Stateville Correctional Center,[1]<br><br>    Respondent. | No. 14 C 2777<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Petitioner Peter Lawrence is serving a life sentence for first degree murder. Lawrence now challenges his state-court conviction by filing a petition pursuant to 28 U.S.C. § 2254 (the "Petition"). For the reasons stated below, I am denying the Petition and declining to issue a certificate of appealability.

## BACKGROUND

Lawrence was convicted of shooting and killing Tameka Harris McFadden as she was leaving church with her daughter. *People v. Lawrence*, No. 1-08-0045 (Ill. App. Ct. 2010). Lawrence confessed to the crime and led the police to a gun that was forensically determined to have fired the shot that killed McFadden. A Cook County, Illinois jury found Lawrence guilty of first degree murder and, taking into account a previous conviction for first degree murder, he was sentenced to life in prison in August 2007.

Prior to trial, Lawrence moved to suppress his confession, claiming that his *Miranda*

---

[1] Although the case was originally filed against Michael Magala, Tarry Williams has been named the Warden at Stateville Correctional Center, where Lawrence is confined, and is therefore substituted as respondent. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts; Fed. R. Civ. P. 25(d); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

waiver was not knowing and voluntary because he was not informed that an attorney had tried to visit him when he made it. The trial court held a hearing on the motion, which established that Chicago police detective Richard Chernikovich first interviewed Lawrence at police headquarters on November 21, 2001, around 12:45 p.m. When Detective Chernikovich advised Lawrence of his *Miranda* rights, Lawrence waived those rights and agreed to talk but denied involvement in the McFadden homicide. The interview ended and, shortly thereafter, Lawrence met with an attorney his mother had retained for him, Presita May. May had Lawrence execute a form that asserted his rights to representation and to remain silent. May also informed Sergeant Dennis Keane of Lawrence's invocation of his rights.

Around 8 p.m. that same evening, however, Lawrence asked Sergeant Keane about the investigation. Sergeant Keane reminded him of his *Miranda* rights; Lawrence responded that he knew his attorney did not want him to speak with the police but that he wanted to know whether the police had discovered the type of gun used to kill McFadden. Sergeant Keane told Lawrence that the police recovered .38 caliber bullets from the crime scene, and Lawrence put his hands over his face and said "thank you." A bit later, Lawrence asked to speak with Sergeant Keane and Detective Chernikovich. The officers again reminded Lawrence of his *Miranda* rights. Lawrence expressed awareness of these rights but blurted out "I just want to let you know that I didn't kill that lady." Lawrence then admitted that he and three fellow gang members had been driving around with the intent of shooting a rival gang member; Lawrence had only been a lookout, but he had fired a .9 millimeter handgun multiple times when he feared that the intended victim was reaching for a gun to return fire.

Following this interview, around 10 p.m., an attorney colleague of Presita May's arrived at police headquarters. When she asked to speak with Lawrence, she was informed that

she could not. At 12:30 a.m. the next day, Assistant State's Attorney Jennifer Coleman interviewed Lawrence in Detective Chernikovich's presence. She advised Lawrence of his *Miranda* rights and asked him if he wanted an attorney present. Lawrence acknowledged, both orally and in a written statement, that his attorney had advised him to remain silent but that he wanted to talk anyway. Lawrence's ensuing statement acknowledged his role in the shooting but emphasized that he did not intend to kill McFadden, expressed remorse, and asked for mercy.

Lawrence filed a motion to suppress these statements, but the trial court concluded that Lawrence, and not the police, reinitiated contact after his initial invocation of his rights to remain silent and to counsel, thereby waiving those rights. And based on the totality of the circumstances, the court concluded that Lawrence's waiver of his *Miranda* rights was voluntary, and denied his motion to suppress.

During voir dire, the trial court instructed the jurors on the burden of proof and related principles, but it failed to ask each juror whether he or she understood and accepted those principles as required by Illinois Supreme Court Rule 431. Lawrence did not object to the court's handing of voir dire.

At trial, the State introduced Lawrence's statement admitting that he had fired a weapon indiscriminately in an attempt to kill a rival gang member into evidence at trial. In addition, a detective testified that Lawrence had told him how to find the weapon he had used in the shooting, a .38 caliber revolver that the detective retrieved from Lawrence's girlfriend. A forensic scientist testified that she had determined through testing that the bullet that killed McFadden was fired from this gun. Following closing arguments and deliberations, the jury found Lawrence guilty, and he was sentenced as described above.

On direct appeal, Lawrence argued that (1) the trial court erred in denying his motion

to suppress his statement because the police's interference with a potential attorney visit rendered his *Miranda* waiver involuntary; and (2) the State failed to establish a proper chain of custody for ballistic evidence linking him to the bullet that killed McFadden. The state appellate court affirmed on March 5, 2010. As to the motion to suppress, the court concluded that even assuming the police had turned away an attorney who wished to speak with Lawrence and had not informed him of the attorney's visit, that did not invalidate his *Miranda* waiver, given his repeated acknowledgments that he understood his *Miranda* rights but wished to disregard his attorney's advice and speak with police. The court also concluded that the State had established an adequate chain of custody for the ballistic evidence.

Lawrence's ensuing petition for leave to appeal (PLA) raised the same arguments as his appellate briefs. The Illinois Supreme Court denied Lawrence's PLA on May 26, 2010. Lawrence did not file a petition for a writ of certiorari in the United States Supreme Court following the resolution of his direct appeal.

On February 18, 2011, Lawrence filed a pro se postconviction petition, *see* 725 ILCS 5/122-1, *et seq.*, in the Circuit Court of Cook County. As relevant here, the petition argued that (1) trial counsel was ineffective for failing to (a) inform him of his right to testify, (b) argue the sufficiency of the evidence, and (c) investigate potential witness Brittney Brown; (2) the prosecutor made improper arguments during closing; (3) voir dire was insufficient; (4) his statement should have been excluded because he was denied the right to counsel; and (5) appellate counsel was ineffective for failing to raise the sufficiency of the evidence and the trial court's non-compliance with Illinois Supreme Court Rule 431, which governs voir dire, on direct appeal. The trial court dismissed the petition.

Lawrence appealed the denial of his postconviction petition, reiterating his arguments

that trial counsel should have investigated Brittney Brown and appellate counsel should have raised the Rule 431 issue. The appellate court affirmed. As to the ineffective assistance of trial counsel claim, the court found that it was barred by Lawrence's failure to provide an affidavit from Brown as required by Illinois law and that, regardless, the record did not suggest that her testimony would have been exculpatory. Finally, the court rejected Lawrence's ineffective assistance of appellate counsel claim, noting that the Rule 431 claim Lawrence faulted his counsel for not raising would have failed because it had not been preserved at trial and Lawrence could not satisfy Illinois's plain error standard.

Lawrence's ensuing PLA to the Illinois Supreme Court reiterated his appellate arguments and revived the claim from the initial postconviction petition that appellate counsel on direct appeal was ineffective for failing to raise a sufficiency of the evidence argument. The court denied Lawrence's PLA on January 29, 2014.

Lawrence filed his 28 U.S.C. § 2254 petition for a writ of habeas corpus on April 10, 2014. Lawrence raises the following claims in his habeas petition:

> A. The trial court erred by concluding that petitioner had validly waived his *Miranda* rights where the police prevented an attorney from seeing him prior to his statement;
>
> B. The State failed to lay a foundation to establish that the bullet recovered from the victim was the same bullet tested by the forensic scientist and introduced at trial;
>
> C. Trial counsel was ineffective for failing to:
>
>> 1. Investigate witness Brittney Brown;
>>
>> 2. Explain petitioner's right to testify to him;
>>
>> 3. Argue that the evidence was insufficient to convict him of first degree murder;

        4. Challenge the chain of custody for the bullet recovered from the victim; and

        5. Ask prospective jurors if they had any biases concerning gangs in Chicago;

    D. Appellate counsel was ineffective for failing to argue that the trial court violated Illinois Supreme Court Rule 431 during voir dire; and

    E. The prosecutors misstated the evidence and made inflammatory and prejudicial statements during closing argument.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a). Violations of state law are noncognizable on federal habeas review unless these violations themselves infringe upon the petitioner's federal rights. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

To obtain relief, a petitioner must show that the state court's proceedings either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Under this deferential standard, the Court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*,

529 U.S. 362, 383 (2000). "[C]learly established Federal law" under section 2254(d)(1) "consists of 'the holdings, as opposed to the dicta,'" of the Supreme Court's cases. *Wong v. Smith,* 131 S.Ct. 10, 11 (2010) (quoting *Williams,* 529 U.S. at 412). A state court decision is contrary to federal law if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant U.S. Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The Court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from U.S. Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). The state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* This is a difficult standard to meet: "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). To obtain relief, a habeas petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

Before a district court can consider a petitioner's claims, the petitioner must "exhaust[ ] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In other words, a petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Johnson v. Pollard*, 559 F.3d 746, 751 (7th Cir. 2009) (alteration in original) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). This means that a petitioner must give state courts an opportunity to resolve his constitutional claims "by invoking one complete round of the state's established

7

appellate review process." *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). To do so, a petitioner must "present both the operative facts and the legal principles that control each claim" at each level of state review. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (citation omitted). This includes presenting the claim in a petition for discretionary review with the Illinois Supreme Court, *Boerckel*, 526 U.S. at 845–47. "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). "A procedural default also occurs when a state court disposes of a claim on an independent and adequate state law ground." *Johnson v. Loftus*, 518 F.3d 453, 455 (7th Cir. 2008) (citing *Coleman v. Thompson,* 501 U.S. 722, 730 (1991)). Procedural default precludes federal court review of a petitioner's habeas claim. *Johnson,* 559 F.3d at 752.

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice caused by the alleged violation of federal law, or by showing that the court's failure to consider the claim would result in a fundamental miscarriage of justice. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice in this context "means an error which so infected the entire trial that the resulting conviction violates due process." *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (citation omitted). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Coleman*, 501 U.S. at 748 (quoting *Murray*, 477 U.S. at 496).

**DISCUSSION**

Lawrence's Claim B presents a state evidentiary issue that is not cognizable in this federal habeas proceeding. His Claims C and E are procedurally defaulted, either because he failed to fully and fairly present them in one complete round of state court review or because the state courts rejected them on independent and adequate procedural grounds. Relitigation of Claims A and D is barred by the AEDPA, codified at 28 U.S.C. § 2254(d)(1)-(2), because the state courts' resolutions of those claims were both legally and factually reasonable.

**I.** **Claim B**

Claim B — that the State failed to establish a proper evidentiary foundation to introduce the bullet that killed the victim — is not cognizable in federal habeas review. As federal habeas corpus petition is not a remedy for errors of state law, including misinterpretations of state evidentiary standards. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Rather, a federal court on habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *See Lambert v. Davis*, 449 F.3d 774, 779 (7th Cir. 2006) ("Nothing in the Constitution entitles state defendants to obtain a federal benefit from errors of state law."); *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) ("errors of state law in and of themselves are not cognizable on habeas review").

Here, Lawrence's claim that evidence was improperly admitted rests on state-law chain of custody requirements and not the federal Constitution. Thus, it is not cognizable in this federal habeas proceeding. *See George v. Smith*, 586 F.3d 479, 483-84 (7th Cir. 2009) (evidentiary issue not cognizable); *Scott v. Jones*, 915 F.2d 1188, 1190 (8th Cir. 1990) (chain of custody issue not cognizable).

**II.     Claims C and E**

Claims C and E are procedurally defaulted. State courts must be given "the first opportunity to address and correct potential violations of a prisoner's federal rights." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation[.]"). If a petitioner fails to properly take advantage of state procedures for reviewing a constitutional claim, therefore, it is "procedurally defaulted" for purposes of federal habeas review. *Perruquet*, 390 F.3d at 514. The procedural default doctrine bars review if "(1) the claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Id.* Additionally, a federal constitutional claim is defaulted if it is not "fairly presented" to the state courts at each stage of their review process. *See Perruquet*, 390 F.3d at 519 (to avoid default, petitioner must "alert the state courts to [claim's] federal underpinnings"); *Wilson v. Briley*, 243 F.3d 325, 327-28 (7th Cir. 2001) (outlining four-factor test to determine whether federal claim was fairly presented).

Lawrence's C(1) Claim—that his trial counsel was ineffective for failing to investigate potential witness Brittney Brown—is defaulted because the state appellate court rejected it on state procedural grounds. The independent and adequate state ground doctrine "bar[s] federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.'" *Franklin v. Gilmore*, 188 F.3d 877, 881 (7th Cir. 1999) (internal quotations omitted); *see also Coleman*, 501 U.S. at 729-30 ("This Court will

10

not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."); *Lee v. Davis*, 328 F.3d 896, 899-900 (7th Cir. 2003) (same). The state appellate court rejected Lawrence's challenge to counsel's investigation of Brown based on Lawrence's failure to provide an affidavit summarizing Brown's testimony. This denial of Lawrence's claim on a procedural basis provides an adequate and independent state law ground for denying relief.

The remaining portions of Claim C and Claim E are defaulted because Lawrence did not fairly present these claims to the state courts. In Claim C, Lawrence alleges that trial counsel was ineffective for failing to explain his right to testify, argue the sufficiency of the evidence, challenge the chain of custody for the bullet recovered from the victim, and ask prospective jurors if they had any biases concerning gangs in Chicago. In Claim E, Lawrence alleges that the prosecutors misstated the evidence and made improper comments during closing argument. These claims are defaulted because Lawrence did not raise these issues at all during his direct or postconviction appeals. Although Lawrence did argue that his trial counsel was ineffective on other grounds, he did not raise these specific factual bases for an ineffective assistance claim, as he was required to do to preserve them for habeas review. *Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012) (ineffective assistance claim defaulted as to specific deficiencies if not presented in one full round of state court review); *Ebert v. Gaetz*, 610 F.3d 404, 412 (7th Cir. 2010) (same). Lawrence's failure to raise Claims C & E through one complete round of state court review results in their procedural default. *See Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009).

Lawrence does not acknowledge his defaults, and for this reason does not assert that (1) there is cause-and-prejudice for the default; or (2) without federal habeas review, a

"fundamental miscarriage of justice" will result. *See Coleman*, 501 U.S. at 750 (describing two exceptions that, if satisfied, allow for review of procedurally defaulted claim). A petitioner's failure to identify grounds to excuse his default is sufficient reason to decline to do so, and nothing in the record suggests, in any event, that either exception applies. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) (because petitioner failed to argue excuse for default, court "cannot consider his claim").

### III.    Claims A and D

Relief on Lawrence's Claims A & D is barred by AEDPA, which instructs that relitigation of a claim adjudicated on the merits in state court — here, Lawrence's claims that the trial court erred in denying his motion to suppress his statement and that his appellate counsel was ineffective for failing to argue that the trial court violated Illinois Supreme Court Rule 431 — is barred unless its state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); *see also Premo v. Moore*, 131 S. Ct. 733, 739 (2011).

In this way, the statute acts as a "relitigation bar" for claims previously adjudicated on the merits in state court. *Harrington v. Richter*, 131 S. Ct. 770, 785- 86 (2011). And clearing that bar by means of any of the listed exceptions in § 2254(d)(1)-(2) is meant to be a "difficult" undertaking, for federal habeas relief functions only to "guard against extreme malfunctions in the state criminal justice system," *Harrington*, 131 S. Ct. at 786, and "not as a means of error correction," *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011) (internal citation omitted). The relevant state court decision for review under § 2254(d) is that of the last state court to consider the merits

12

of Claims A & D: the state appellate court, on direct appeal as to Claim A and on postconviction appeal as to Claim D. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

In reviewing Lawrence's claim that his confession should have been suppressed because he did not knowingly waive his *Miranda* rights, the state appellate court correctly examined whether Lawrence's waiver was made with an awareness of the nature of the rights being abandoned and the consequences of the decision to abandon them. *See Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010). Therefore, its decision was not "contrary to" federal law.

Nor was the state appellate court's resolution of this claim legally or factually unreasonable. Lawrence argued that his *Miranda* waiver was not knowing because he was not aware that an attorney had tried to visit him when he made it. But the court properly concluded that Lawrence had been fully informed of his rights — including by his attorney — and determined that he wished to waive them in an attempt to obtain mercy; the second attorney's thwarted visit did not impact the validity of the waiver. *Id.* This is fully consistent with Supreme Court case law, which has held that "[e]vents occurring outside the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." *Moran v. Burbine*, 475 U.S. 412, 422 (1986).

In reviewing Lawrence's claim of ineffective assistance of appellate counsel, the state appellate court correctly identified the two-part test for such claims set forth in *Strickland v. Washington*, 466 U.S. 688 (1984), and *Evitts v. Lucey*, 469 U.S. 387 (1985). Therefore, its decision was not "contrary to" federal law. *See* § 2254(d)(1).

The appellate court also reasonably applied the test, reasoning that counsel could not have been ineffective for failing to raise an issue that Lawrence had forfeited and that did not

13

warrant relief under Illinois's plain error standard. Lawrence did not object to the error at trial, and the Illinois Supreme Court has recognized that Rule 431 errors are forfeited if not raised at trial. *See People v. Thompson,* 939 N.E.2d 403, 413-14 (Ill. 2010). Although Illinois defendants may potentially obtain relief for forfeited errors where the evidence was closely balanced, *see People v. Wilmington*, 983 N.E.2d 1015, 1022 (Ill. 2013), that was not the case here. The government presented overwhelming evidence of Lawrence's guilt, including Lawrence's statement, ballistics evidence matching the bullet that killed the victim to a gun retrieved from Lawrence's girlfriend at his direction, and testimony from eyewitnesses to the shooting that matched the details of Lawrence's statement. Thus, the argument that Lawrence faults his appellate counsel for not raising was meritless given the standard of review, and counsel cannot be deemed ineffective for having omitted it from his brief. *See Martin v. Evans,* 384 F.3d 848, 852 (7th Cir. 2004). The appellate court's rejection of Lawrence's ineffective assistance of appellate counsel claim was reasonable and may not be relitigated in this proceeding.

## VII.     Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner "must make a substantial showing of the denial of a constitutional right" by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted); *see also* 28 U.S.C. § 2253(c)(2). When a claim is resolved on procedural grounds, a district court can grant a certificate of appealability "only when the proverbial reasonable jurist

would find both the district court's procedural decision and the merits of the claim debatable." *Peterson v. Douma*, 751 F.3d 524, 530–31 (7th Cir. 2014).

As fully explained above, Lawrence's claims are either procedurally defaulted, noncognizable, or barred by 28 U.S.C. § 2254(d). Nothing in the record suggests that reasonable jurists would debate the outcome of the Petition or find a reason to encourage Lawrence to proceed further. Accordingly, I decline to issue Lawrence a certificate of appealability.

## CONCLUSION

Lawrence's petition for a writ of habeas corpus is denied, and I am declining to issue a certificate of appealability.

ENTER:

James B. Zagel
United States District Judge

DATE: March 11, 2016